## In Re Petition for Disbarment of B. D. Wade.

No. 39644 May 2, 1955 79 So. 2d 727

*W. W. Pierce,* Jackson, for appellant.

C. B. *Snow,* Ernest *Ray* Edwards, *Rufus* Creekmore, and *Milton* Mitchell, Jackson, for appellee.

ETHRIDGE, J.

Pursuant to a petition filed by a Committee of the Hinds County Bar Association, and after a lengthy hearing, the Chancery Court of Hinds County permanently disbarred B. D. Wade, appellant. The final decree adjudicated him to be guilty of seven of the twelve specifications or charges made against him.

It will serve no purpose to set forth in detail the evidence and facts concerning the seven specifications upon which appellant was disbarred. We have considered carefully the lengthy record and briefs. █ The great weight of the evidence supports the decree of the chancery court permanently disbarring Wade for unprofessional and dishonest conduct, wholly inconsistent with and opposed to the high standards of character and performance expected of a member of the bar.

The evidence concerning Specification or Charge No. 1 shows that appellant prepared a will for an aged and ignorant Negro man named James Savage, who desired to leave his estate, consisting of seven lots of land in the City of Jackson, to his four daughters. Without the knowledge or consent of Savage, Wade designated himself as executor of the will to serve without bond, and inserted in the will a provision authorizing Wade to sell three of the lots, and from the proceeds to first pay the court costs accrued in probating the will, and then to pay the balance of the proceeds of these three lots, worth about $1,300, to appellant. Wade contends that this provision was written to compensate him for rendering legal services to Savage, both in the past and for the balance of Savage's life. However, this contention is so incon-

sistent with the testimony of Savage, and with Wade's conduct with reference to the will after it was executed, that it is wholly unreasonable.

Moreover, Robert Butler, appellant's witness and devisee of another lot in Savage's 1951 will, testified that he brought Savage to Wade's office, and was present during the three conversations between Savage and Wade concerning the will, but that he did not know anything about whether Wade was supposed to get anything under the will. Savage had never seen Wade before, and being 74 years of age at the time and not engaged in any business, the amount of the fee for alleged future legal services is ridiculous. Moreover, Wade admitted that Savage paid him $25 for drawing the will, and a week later Savage paid him a fee of $5.00 for preparing three affidavits. This is wholly inconsistent with the contention that the bequest to Wade was to cover all of his future legal services for Savage. The two provisions to which Savage objected were written in pencil by Wade on a rough, typewritten copy of Savage's will. When later contacted by another lawyer representing Savage, Wade refused to turn over to Savage or his attorney the will, and asserted a "lien" on it for $275. Wade admitted that he had his secretary type and give Savage's granddaughter a false copy of the will. These and other circumstances in the record amply warranted the chancery court in finding that appellant made himself a beneficiary in the will without the knowledge and consent of Savage.

The evidence on Specification or Charge No. 2, the Wallace bond matter, reflects that Wade signed the names of two persons as sureties, C. L. and Lula Grisham, to two appearance bonds of Howard T. Wallace without the authority of either of these parties, and that he also inserted their names in the sureties' oaths without any authority from them. Appellant admits that the Grishams did not personally sign the bonds, but contends that he signed them with their knowledge and authority. The Grishams denied this, and asserted that they had

given appellant no such authority, but in fact they had refused to go on the bonds when he had requested them to do so. This is understandable since only about a month before the date of the bonds, the Grishams were required to pay a forfeiture of $1,525 on an appearance bond which appellant had persuaded them to execute as sureties. The Grishams received no consideration for the Wallace bonds.

Moreover, when appellant was first interrogated about the Wallace bonds by the district attorney, he stated that the Grishams had in fact signed them, although appellant admittedly knew that this was false. Appellant offered as a witness Elnora Bush, a Negro woman, who was a surety on these bonds. She first testified that she was present when the Grishams signed the bonds before a notary public, and later said that Lula Grisham told her she had signed the bonds, but since Wallace had escaped, she would deny it. The chancellor then directed that she be imprisoned on a charge of perjury. She was furnished her own counsel, and later changed her testimony, and said that two or three weeks before the trial, Wade had offered to pay her money if she, Elnora, would testify that Lula Grisham told her that Wade signed the bonds with her consent; that pursuant to Wade's request, she undertook to bribe Lula Grisham to so testify; that in fact Elnora had lied about what Lula Grisham said, as a result of the urgings of Wade; and that Lula did not state to her that she had authorized execution of the bonds. Wade denied this. This and other evidence on this specification is clear and convincing to us that Wade signed these appearance bonds without authority from either of the Grishams.

Specification No. 8, the Tornes deed of trust matter, and Specification No. 9, the Charlie Brown fee matter, are also particularly reprehensible and unworthy of a member of the bar. The other three specifications or charges of which the chancery court found appellant guilty are also amply supported by the evidence, and

certainly we cannot say that the trial court's decision is against the weight of the evidence on these other three specifications. In re Poole, 76 So. 2d 850 (Miss. 1955).

Appellant was properly and permanently disbarred by the chancery court. His conduct, as reflected by this record, was dishonest, inexcusable, and wholly contrary to his responsibilities as a member of the bar.
Affirmed.

All justices concur.